# V. G. FISCHER ART COMPANY *v.* HUTCHINS.

---

EVIDENCE; HUSBAND AND WIFE; SELF-SERVING DECLARATIONS; GIFT; BAILMENT.

1. Self-serving declarations of an alleged donor, not made in the donee's presence, are not admissible in evidence to impeach the gift.

2. Evidence that an article was purchased by a husband for his wife, and taken to and deposited in her house, with the intention of devesting the husband of ownership and of making the wife the owner, is sufficient to go to the jury on the question whether there was sufficient delivery to support the claim of the wife as donee of the article.

3. An instrument signed by a husband, reading, "I hereby sell and set over and have made personal delivery to my wife," and referring to certain articles specified therein, is sufficient, whether regarded as a bill of sale, or a confirmation of a previous verbal gift, to pass the title to an included article then in the husband's possession, notwithstanding it was not recorded. (Citing *Colbert* v. *Baetjer*, 4 App. D. C. 416.)

4. A transfer to a third person by a bailor is effective as against the bailee, though the latter had advanced a part of the purchase price to the former, where he has no lien for the amount advanced.

No. 2537. Submitted November 3, 1913. Decided December 1, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in favor of plaintiff in an action of trover for the alleged conversion of a picture.                           *Affirmed.*

The COURT in the opinion stated the facts as follows:

The declaration of Rose Keeling Hutchins charged the defendant, V. G. Fischer Art Company, appellant, with the conversion of a Gainesborough picture, alleging damages at $25,-000.

Defendant pleaded the general issue and statute of limitations of three years.

Plaintiff's testimony tended to show that she is the widow of Stilson Hutchins, who died April 21, 1912; that in the summer of 1907 she and her husband were in London, England, where she saw the picture entitled, "The Girl in the Brook," said to be by Gainesborough, in a picture dealer's shop. Was purchased by her husband at that time and given to her.

Plaintiff then owned the house 1603 Massachusetts Avenue, in which she had a picture gallery containing other pictures; that it was to be sent to the defendant to be revarnished and renovated, as the pictures purchased by them usually were.

Stilson Hutchins purchased other pictures during their visit to London. Plaintiff did not return to Washington until December, 1908. When she returned, her husband was ill, suffering from a second stroke of paralysis. She could not take him to her house in Massachusetts Avenue, because, during her absence, her husband had rented the house, together with the furnishings, to a Mrs. Traver. Plaintiff took her husband to Augusta, Georgia, where they remained from December, 1908, to March, 1909. While in Augusta, on March 25, 1909, Stilson Hutchins executed and delivered to her a paper styled a bill of sale. The same was produced and read in evidence. It recites, "For value received, I hereby sell and set over and have made personal delivery to my wife, Rose Hutchins, the following named articles, now in 1603 Massachusetts Avenue, Washington, District of Columbia, and authorize her to take possession of the same whenever the premises are vacated by the present lessee, Mrs. Traver." The articles recited include carriages, harness, piano, rugs, silver plate, certain portraits, and "following pictures now in my collection." Among these is mentioned " 'Girl in Brook' (Gainesborough)—now at Fischer's." Stilson Hutchins had been quite ill and there had been friction in the family between plaintiff and her husband's sons. Plaintiff was much worried about her personal belongings in the house, and asked her husband to give her something in writing that would prevent any future dispute. At his dictation, she put down certain things in the house that he remembered and that she remembered, and certain pictures that she wished especially. There were several pictures in the gallery that she had bought herself and remembers him mentioning them to her, and certain pieces of furniture. He told her what to write down. She thought of the things she wanted and he would add things to it. She knew nothing about a bill of sale or deed of gift,—would not know how to write the words. The most of the things mentioned in the paper executed by her husband as being in the house were left in it when it was rented to Mrs. Traver, except some pictures which he moved, of which she had no knowledge until afterwards.

In March, 1909, she returned to Washington with her husband, went to the Highland Apartment House and from there straight to Europe. Did not enter her own house, the tenant being still in possession when she and her husband went to Europe together, and did not know that the picture was not there. They returned to America early in December, 1909. He was very ill. They went to the Massachusetts Avenue house, but she paid very little attention to anything on account of the circumstances, and did not notice that the picture involved in this suit was not in the house.

In the fall of 1910, after she got back to her house, she discovered that the Gainesborough picture was not there. Immediately went to see Mr. Fischer, part owner and manager of the defendant. She explained to him that she had lately found that her Gainesborough was at his store, and asked him where it was. He said he had sold it for $6,000. She told him the picture was hers and asked him how he happened to sell it. He immediately flew into a rage and became unintelligible, and she said she would have her attorneys look into it. This was the only interview.

While in Paris in May, 1909, her husband had a copy made of the bill of sale and sent it to Arthur D. Addison in Washington. Arthur D. Addison testified that he was a real estate broker and had acted as agent for Stilson Hutchins in renting the house to Mrs. Traver. He received a letter from Stilson Hutchins in reply to a letter he had written him on March 31, 1910, to the effect that he had been requested by an attorney for a list of the articles transferred to Mrs. Hutchins. The letter of Huchins was that, "on the 25th of March, 1909, in Augusta, Georgia, I gave my wife, Rose Hutchins, the inclosed list of pictures, furniture, etc., which she is to have possession at the expiration of Mrs. Traver's lease, November 20, 1909." Inclosed was a verbatim copy of the bill of sale.

A customhouse broker testified that he procured two cases from the customhouse in Georgetown, September 1, 1907, Mr. Hutchins paying the charges. Delivered them in the house at 1603 Massachusetts Avenue, where they were opened and con-

tents found according to the invoices. "Girl in Brook" was one of the pictures, and was invoiced at the price of £20.

Defendant offered in evidence testimony of Victor G. Fischer, president, treasurer, and manager of defendant, tending to show that Hutchins was vice president and holder of over one third of the capital stock. Witness was in Europe in the summer of 1907, and returned to Washington about the 7th or 11th of October, 1907. Prior to that time he had never seen the picture. On his arrival, found the picture at defendant's place of business; that he spoke to Hutchins about it, who told him to sell the picture under the same conditions that many other pictures had been offered by defendant for sale. Defendant had been in the habit of selling pictures for him, Hutchins receiving one third of the profits of sale; balance going to the defendant. Picture was publicly offered for sale in the defendant's gallery and sold in or about December, 1909, to Mrs. Clarence Moore. In the summer of 1909, while in Europe, he received a letter from Washington, advising him that the representative of the vendor in London claimed that he had not been paid, and seeking payment. That he saw Hutchins in Paris in the summer of 1909. Hutchins informed him that the picture had not been paid for, and gave witness all documents in relation to same and asked him to pay for it. Gave witness all the bills. Knew nothing about the transaction and instructed Mr. Cohen to pay the bill. Cross-examined, he said the condition under which the picture was first put in defendant's store was for the company to sell it and to give to Mr. Hutchins his share of the profits. That was the general arrangement for all pictures he placed with defendant for sale; and there were many such. Witness returned in October and found the picture at the place of business of the defendant. Mrs. Hutchins had also seen the picture there months before it was sold and again a month before, when she came on business to defendant's place, without telling witness that she was claiming the picture. Mr. Hutchins asked witness to pay the money for the picture. He made the request in the presence of Mrs. Hutchins in her apart-

ment in Paris, where witness lunched with them. This was in July, 1909, or about that time. May have been July, or may have been September or August. Witness cabled from Paris to Washington to pay the money for Hutchins.

William J. Dante testified that he was the confidential secretary to Stilson Hutchins from 1895 to 1910, and thereafter trustee of his estate. He conducted the correspondence of Hutchins, receiving, writing, and signing his letters; that he saw the letters addressed to Hutchins from Smith in London with reference to the balance of payment for the picture. He wrote replies at Hutchins's dictation. Plaintiff's attorney admitted the London art dealer was demanding the balance of the purchase money for the picture and threatened to bring suit. Witness further testified that he had a conversation with Hutchins on the subject of said picture either six or eight months after the pictures had been received in America. The witness was asked what he said with reference to this picture. This was objected to. Defendant explained that purpose of it was to show that witness asked Hutchins why he did not settle the bill and stop the dunning. Hutchins told him the picture was there for sale, and when it was sold he would pay the bill. Counsel added: "That is all I want to show, that Mr. Hutchins acknowledged that the terms of the deposit of the picture with Fischer was for the purpose of sale." The court sustained the objection. Defendant excepted.

Defendant offered the testimony of Dante, tending to show that Dante, as trustee of Stilson Hutchins, received from the defendant $1,000 of the proceeds of the sale. The time of receipt was not given. Cross-examined, Dante said he had heard of plaintiff's claim to be the owner of the picture prior to having received the money from defendant. That when the bill was paid, Hutchins had in bank subject to witness's check, and that of Walter Hutchins, and every month thereafter, thousands of dollars in order to meet his bills, if he desired to do so. Plaintiff testified that, during the months of June, July, and August, 1909, her husband was principally in sanatoriums in various

parts of Europe, and they were not in their apartment, which was rented at that time. Did not return until September. Might have been in the early part of the month. Took her husband there from sanatorium in England. He was very ill and very feeble. Had a special nurse for the insane with him. When she went into the apartment, she had one nurse for her husband, and shortly thereafter had three. He was not capable of attending to any business during the months of July, August, or September. It is possible Mr. Fischer may have called there in September. He did not have any conversation with her husband about any business in her presence. He was in no way capable of having any business conversation, and was not allowed to have any. There was no opportunity for Fischer to have a business conversation without her knowledge as she never left him. Saw no papers given by her husband to Fischer while at her apartment in Paris in that summer. She never saw the picture in defendant's showroom. Never heard of the picture being advertised for sale, nor was it ever called to her knowledge or her attention that there ever was such a picture for sale by the defendant.

R. Ross Perry testified that he is a member of the bar, and there was placed in his firm's hands about June, 1909, by solicitors in London, a claim of Smith & Company, for a balance due on the picture. He wrote no letters to Hutchins or his secretary, or anyone except Mr. Cohen, which was after the claim had been settled. Wrote no letters to Fischer. He produced a letter of September 14, 1909, to Mr. Cohen, acknowledging receipt of $1,899.30, in payment to the estate of the London seller.

Defendant prayed the court to instruct the jury to return a verdict for the defendant on the ground that there was no evidence of delivery of the picture to the plaintiff, and therefore no valid gift had been shown. This was refused, and defendant excepted. The court then charged the jury on the issues generally. No exceptions were taken to the charge. The jury returned a verdict for the plaintiff for $6,000, on which judgment was entered.

*Mr. Myer Cohen* and *Mr. William G. Johnson,* for the appellant:

1. The evidence failed to establish a valid gift. Schouler, Per. Prop. 2d ed. sec. 67; see also 2 Kent, Com. 438; *Cox* v. *Sprigg,* 6 Md. 274; *Cochrane* v. *Moore,* L. R. 25 Q. B. Div. 57; *United States* v. *Mahan,* 16 Wall. 143; *Basket* v. *Hassell,* 107 U. S. 602; *Marshall* v. *Jaquith,* 134 Mass. 138; *George* v. *Spencer,* 3 Md. Ch. 353; *Dilts* v. *Slevenson,* 17 N. J. Eq. 407; *Skillman* v. *Skillman,* 13 N. J. Eq. 403; *Trowbridge* v. *Holden,* 58 Me. 117; *Jennings* v. *Davis,* 31 Conn. 134; *Kenniston* v. *Kenniston,* 56 Vt. 680.

2. The declaration of Stilson Hutchins that the picture was sent to the salesroom of defendant for sale should have been admitted in evidence. *Milford* v. *Billingham,* 16 Mass. 108; *Mutual L. Ins. Co.* v. *Hillmon,* 145 U. S. 285; *Campbell* v. *Holt,* 115 U. S. 620.

*Mr. John C. Gittings* and *Mr. J. Morrill Chamberlin* for the appellee:

1. As a general rule, the fact of delivery may be arrived at from the acts, conduct, and declarations of the alleged donor. Where the intent of the donor is proved by a writing under his own hand, the court will presume a delivery in support of the gift on slight evidence. *Brickerhoff* v. *Lawrence,* 2 Sandf. Ch. 400; *Manson* v. *Abbey,* 53 N. Y. 794; *Pennington* v. *Lawson,* 23 Ky. L. Rep. 1360, 65 S. W. 120.

2. And where the parties stand in close personal relations, such as members of the same family, it often becomes unnecessary to prove an actual manual delivery, the law presuming one in such cases from the attendant circumstances. *Grant* v. *Grant,* 34 Beav. 623; *Isaac* v. *Williams,* 3 Gill, 278; *Hitch* v. *Davis,* 3 Md. Ch.; *Wheeler* v. *Wheeler,* 43 Conn. 503.

3. The declarations of Hutchins offered to be proved by the witness Dante were not admissible. *Tierney* v. *Corbett,* 3 Mackey, 264.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. There was no error in excluding the declarations of Hutchins offered to be proved by the witness Dante. They were not made in the presence of the plaintiff; were in the declarant's interest; and an impeachment of his own acts. *Tierney* v. *Corbett,* 2 Mackey, 264, 267.

2. There was no error in refusing the instruction to find for the defendant. The court, agreeing with defendant that delivery was essential to the completion of the verbal gift, so instructed the jury; and, further, that there could be no recovery by the plaintiff upon the theory that there had been actual manual delivery shown by the evidence. But he further charged that, if the picture had been taken to and deposited in plaintiff's house with the intention to devest Hutchins of ownership, and to make plaintiff the owner of the same, it would be a constructive delivery, and invest plaintiff with the title. No exception was taken to this instruction. The evidence on this issue was sufficient to go to the jury, whose province it was to determine the credibility of the witness and the weight of the evidence.

3. The question of the sufficiency of the parol evidence of the gift becomes unimportant, however, in view of the written transfer of March 25, 1909.

This transfer, whether considered as a bill of sale, or as a confirmation of the previous verbal gift, had the effect, as between the transferrer and the transferee, to pass the title to the picture then in defendant's possession, notwithstanding it was not recorded. Code sec. 546 [31 Stat. at L. 1275, chap. 854]; *Tierney* v. *Corbett,* 2 Mackey, 264, 269; *Colbert* v. *Baetjer,* 4 App. D. C. 416. See also *Briggs* v. *United States,* 143 U. S. 346, 354, 36 L. ed. 180, 184, 12 Sup. Ct. Rep. 391.

The transfer, being effective as to Stilson Hutchins, was equally so as to defendant, which was, at the time, his bailee, and nothing more. Defendant's sole defense was as such bailee. It is true that it had, at Hutchins's request, advanced the money

to pay the balance due by him to the London dealer; but there was no lien upon the picture in favor of the dealer, and there is no claim that Hutchins pledged the picture to defendant as security for the debt. Why the request for this payment should have been made does not appear, because the evidence shows that at the time Hutchins's confidential agents had abundant funds to meet this and all other bills; and that they continued to have.

When the defendant paid over to said agent $1,000 as Hutchins's individual share of the profits of the sale does not appear, but the evidence shows that the agent, at the time of receipt, knew that the plaintiff claimed the ownership of the picture. Defendant, as we have seen, did not claim to be a purchaser of the picture, or to hold a lien thereon.

Defendant had no protection under the statute of limitations, because the transfer was dated March 25, 1909, and the action was begun two years thereafter.

No reversible error having been committed, the judgment is affirmed with costs. *Affirmed.*